## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOA

| | |
|---|---|
| John J. Clemons, | Civil Action No. _____ |
| Plaintiff, | **COMPLAINT** |
| vs. | JURY TRIAL DEMANDED |
| Metropolitan Council, | |
| Defendant. | |

## COMPLAINT

John J. Clemons, plaintiff herein, by and through its undersigned attorneys, for its complaint herein, alleges as follows:

### PARTIES

1.      Plaintiff John J. Clemons is a resident of Hennepin County, state of Minnesota.

2.      Plaintiff was an employee of Defendant as defined in 42 U.S.C. § 12111; and the Minnesota Human Rights Act, Minn. Stat. § 363A.03, subd. 15.

3.      Plaintiff Metropolitan Council (hereinafter "Metro Transit"), is a public corporation and political subdivision of the State of Minnesota, established by Minn. Stat. § 473.123.

4.      Defendant is an employer as defined in 42 U.S.C. § 12111; and the Minnesota Human Rights Act, Minn. Stat. § 363A.03, subd. 16.

### JURISDICTION AND VENUE

5.      This Court has jurisdiction and venue pursuant to 49 U.S.C § 1331, this action arising under the laws of the United States, specifically Titles I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.*, and 42 U.S.C. § 1983.

6.      This Court has jurisdiction over the pendent and related state claims pursuant to the provisions of 28 U.S.C. § 1367 and Minn. Stat. Chap. 363A.

7.      Plaintiff filed a timely charge of discrimination with the U.S. Equal Employment Opportunity Commission and a charge of discrimination with the Minnesota Department of Human Rights.

8.      The Minneapolis Area Office of the U.S. Equal Employment Opportunity Commission sent a letter notifying Plaintiff of his Right-to-Sue based on the allegation of the charge identified in the preceding paragraph herein.  The letter was dated August 23, 2011 and it was received by Plaintiff on or about August 24, 2011.

## FACTS

9.      Defendant, through its Metro Transit operating division, hired Mr. Clemons as a bus driver on August 9, 2010.

10.     Shortly thereafter, Mr. Clemons began the required five-week paid training period.

11.     On August 12, 2010, Mr. Clemons experienced bladder pain while conducting the training referenced in the preceding  paragraph herein. Mr. Clemons notified Metro Transit manager Dan Stoffer of his problems and  Mr. Clemons received medical attention.

12.     In the evening of August 12, 2010, Mr. Clemons notified Mr. Stoffer and Ms. Maria Crescini, Metro Transit manager of instruction, that he had been diagnosed with a kidney infection.

13.     On August 13, 2010, Mr. Clemons provided Metro Transit via email with a medical note from Dr. John Kraemer of Park Nicollet urgent care, which requested that Metro Transit excuse Mr. Clemons from work from August 13, 2010 through August 15, 2010.  On August 13, 2010,

Mr. Clemons spoke to Mr. Stoffer regarding his condition.  Mr. Stoffer stated that his absence would count as "one strike against him."

14.     On or about August 15, 2010, Mr. Clemons notified Ms. Crescini that he had doctors' appointments on August 16 and 18, 2011.

15.     On August 18, 2010, Mr. Clemons provided Metro Transit with a medical note from Dr. Kathleen Ayaz stating that Mr. Clemons was being treated for an infection and that he should exercise caution driving a commercial vehicle.

16.     Despite Mr. Clemons multiple attempts to communicate with Mr. Stoffer and Ms. Crescini after August 18, 2010, Mr. Clemons was never contacted by Ms. Crescini or Mr. Stoffer regarding his medical condition between August 18, 2010 and August 23, 2010.

17.     Metro Transit terminated Mr. Clemons employment on August 23, 2010.  The termination letter from Ms. Crescini and Dan Stoffer and was titled "Training Attendance Policy Violation".  In pertinent part, the letter stated:

> Having completed this paperwork, you are currently no longer employed at Metro Transit.  Metro Transit will defer you to the class of September 6, 2010.
>
> To return to Metro Transit you will need to inform Human Resources by August 30, 2010, of your ability to return to work.  You will need to be rehired for the part-time operator class of September 6, 2010.  You must retake and pass a Pre-employment Physical, a DOT Physical, and a DOT Pre-employment Drug Screen arranged by Metro Transit Human Resources.
>
> All future communications, in writing or by phone, must be done by through Shirley Evans, Metro Transit Human Resources, at 612.349.7559.
>
> We wish you a full and complete recovery.

18.     Within a day or two following the receipt of his termination, Mr. Clemons submitted a complaint to the Metropolitan Council's Office of Diversity and Equal Opportunity ("ODEO") regarding his treatment by Metro Transit on account of his disability.

19.    On August 26, 2010, Wanda Kirkpatrick, Director of the ODEO, informed Mr. Clemons

that she was assigning his case to her investigator, Ms. Sydnee Woods.

20.    On August 29, 2010, Mr. Clemons notified Ms. Woods, Ms. Kirkpatrick and others via

email that he had emergency surgery for a detached retina the previous day.  Appropriate

medical documents were attached to the email.

21.    After receiving no response to his August 29, 2010 email, Mr. Clemons again emailed

Ms. Woods on August 31, 2010.  Ms. Woods emailed back notifying him that:

> Good Afternoon, Mr. Clemons.  It is my understanding that HR will be contacting you
> regarding your status with Transit based on your most recent surgery.  Please let me
> know when you've heard from them.  Thank you, Sydnee.

22.    Three weeks later, on September 21, 2010, Mr. Walt Joy of Metro Transit Human

Resources contacted Mr. Clemons via telephone.  Mr. Joy emailed Mr. Clemons that same day

noting the "verbal job offer" that Mr. Joy gave Mr. Clemons via the telephone.  Mr. Joy

specifically stated in his email that the job offer "is conditional on successful passing of a fitness-

for-duty physical, pre-employment physical and drug-screen.  After "offering" Mr. Clemons the

job offer Mr. Joy offered Mr. Clemons his "congratulations" as if Metro Transit was doing him a

favor rather than respecting his civil rights.

23.    That same day, September 21, 2011, Ms. Kirkpatrick contacted Mr. Clemons via the

telephone.  During that conversation, Mr. Clemons informed Ms. Kirkpatrick that he would not

be able to start the training in October as Mr. Joy offered because he would not be able to pass

the tests Metro Transit was mandating – which all parties represented was a pre-requisite to his

being able to take part in *any* training, whether it required him to drive or sit in a classroom.

24.    In response to Mr. Clemons notifying Metro Transit of his medical disability, Ms.

Kirkpatrick requested "[S]omething from [Mr. Clemons] Doctor BEFORE October 11, stating

4

three things.  A. What is the issue?  B. Why you will not be able to pass the DOT physical (You

must be able to see in order to pass the training) c. What is the prognosis of your medical issue?

(This is a timeframe of when you can return.  It must be a reasonable return date)".

25.     Mr. Clemons provided medical documentation of his injury and the best information he

could obtain regarding the prognosis of his optical issues.  The documentation submitted by Mr.

Clemons prior to this email included two doctor's notes regarding the existence of the surgery

and a medical pamphlet issued by the surgeon's medical firm, with the surgeon's name on it, that

stated that it could take up to six months for Mr. Clemon's eyes to return to normal.

26.     Following the October 11, 2011 correspondence, Metro Transit made no efforts to re-hire

him or accommodate his disability until he was no longer disabled in April 2011.

27.     On April 4, 2011, Mr. Clemons provided Metro Transit with a valid and authoritative

medical examination certificate from Dr. Bernie V. Rottach, O.D. of Westonka Vision Center in

Mound, Minnnesota.  The letter and DOT medical examiner's certificate were signed by Dr.

Rottach and indicated that Mr. Clemons' disability – the effects of his detached retina surgery –

were abated and Mr. Clemons was cleared to drive with corrected vision.

28.     Despite receiving medical documentation demonstrating that Mr. Clemons was no longer

disabled, Metro Transit refused to communicate with Mr. Clemons and directed him to the

EEOC.

29.     In April 2010, the EEOC represented to Mr. Clemons that Metro Transit required Mr.

Clemons to take Dr. Rottach's letter and DOT card to "DOT's doctor for certification. . . once

DOT doctor issues you a card reflecting you wear corrective lens, you are free to return to work

and complete the required training program."

30.     In May 2010, Mr. Clemons was seen at Dr. Gil Lewandowski's office and he received an updated DOT certification card which approved Mr. Clemons to operate a motor vehicle with corrective lens.

31.     Mr. Clemons has not been re-hired for his previous employment position with Metro Transit.

32.     The Metropolitan Council employee handbook, titled, "Ground Rules for the Workplace", states that the Metropolitan Council "will attempt to provide workplace adjustments and reasonable accommodations to employees who have a medical condition that limits their ability to perform their job without an adjustment.  The Metropolitan Council's focus is on the person's ability rather than the disability". The  handbook also states that it is the Metropolitan Council policy to offer the following reasonable accommodation measures when such would not constitute an undue hardship (defined as "Excessively costly, extensive, substantial, or disruptive, or that would fundamentally alter the nature or operation of the business"): "[j]ob restructuring", "allowing paid or unpaid leave for absences for medical treatments", or "temporary assignment to a restricted job duty".  The policy further describes "restricted duty job assignments" as possible accommodation, that is "subject to availability, for a period generally not to exceed six months."

33.     Metro Transit is a motor carrier subject to all federal laws and regulations.

34.     Metro Transit conducted a background check on Mr. Clemons prior to offering him employment in August 2010 despite knowing that he was endorsed as school bus driver in the state of Minnesota.

35.     At the time of Mr. Clemons job application with Metro Transit in March 2010 for the position of bus operator, Metro Transit required Mr. Clemons to disclose to Metro Transit all prescription and non-prescription drugs that he was taking without exception.

**COUNT I**
**DISABILITY DISCRIMINATION**
**42 U.S.C. § 12112**

36.     Plaintiff hereby repeats and realleges each and every matter contained in paragraphs 1-35 above.

33.     Plaintiff suffered from a disability on and after August 12, 2010 when he suffered from a kidney infection that substantially limited one or more major life activities, including his ability to drive a bus.

34.     Plaintiff was a member of a protected class upon becoming disabled on August 12, 2010.

35.     Plaintiff was regarded as disabled by Metro Transit following his August 12, 2010 kidney infection.

36.     Metro Transit had knowledge that Plaintiff was disabled on account of his kidney infection.

37.     Plaintiff was able to perform his employment position with Metro Transit with reasonable accommodation, specifically medical leave to treat the kidney infection and his allowance for frequent bathroom breaks and job restructuring and modification contingent upon the pace of recovery when he could attend the training for his employment position.

38.     Plaintiff provided Metro Transit with several notices of his medical issues and treatment in an attempt to receive reasonable accommodation from Metro Transit.

39.     Plaintiff's employment was terminated by Metro Transit on August 23, 2010 on account of his disability.

40.     Plaintiff's employment termination constituted unlawful discrimination under 42 U.S.C. § 12112.

41.     While attempting to enforce his civil rights following his employment termination, Plaintiff was again disabled on August 29, 2010 when he had emergency surgery for a detached retina, which caused him to suffer a disability that was not fully abated until April 4, 2011.

42.     Plaintiff informed Metro Transit of his retina surgery and Metro Transit knew that he was fully recovered as of April 4, 2011 when he provided Metro Transit with medical documentation from Dr. Dr. Bernie V. Rottach, O.D. of Westonka Vision Center.

43.     As a direct and proximate result of Defendant's wrongful conduct toward Plaintiff, Plaintiff has suffered damage from loss of income that he has not yet been able to replace, emotional distress, punitive damages, attorney's fees, and all other damages recoverable by law, all in an amount to be determined at trial in excess of $75,000.

## COUNT II
## DISABILITY DISCRIMINATION
## MINNESOTA HUMAN RIGHTS ACT

44.     Plaintiff hereby repeats and realleges each and every matter contained in paragraphs 1-43 above.

45.     Plaintiff suffered from a disability on and after August 12, 2010 when he suffered from a kidney infection that substantially limited one or more major life activities, including his ability to drive a bus.

46.     Plaintiff was a member of a protected class upon becoming disabled on August 12, 2010.

47.     Plaintiff was regarded as disabled by Metro Transit following his August 12, 2010 kidney infection.

48.     Metro Transit had knowledge that Plaintiff was disabled on account of his kidney infection.

49.     Plaintiff was able to perform his employment position with Metro Transit with reasonable accommodation, specifically medical leave to treat the kidney infection and his allowance for frequent bathroom breaks and job restructuring and modification contingent upon the pace of recovery when he could attend the training for his employment position.

50.     Plaintiff provided Metro Transit with several notices of his medical issues and treatment in an attempt to receive reasonable accommodation from Metro Transit.

51.     Plaintiff's employment was terminated by Metro Transit on August 23, 2010 on account of his disability.

52.     Plaintiff's employment termination constituted an unfair employment practice in violation of Minn. Stat. § 363A.08.

53.     While attempting to enforce his civil rights following his employment termination, Plaintiff was again disabled on August 29, 2010 when he had emergency surgery for a detached retina, which caused him to suffer a disability that was not fully abated until April 4, 2011.

54.     Plaintiff informed Metro Transit of his retina surgery and Metro Transit knew that he was fully recovered as of April 4, 2011 when he provided Metro Transit with medical documentation from Dr. Dr. Bernie V. Rottach, O.D. of Westonka Vision Center.

55.     As a direct and proximate result of Defendant's wrongful conduct toward Plaintiff, Plaintiff has suffered damage from loss of income that he has not yet been able to replace, emotional distress, punitive damages, attorney's fees, and all other damages recoverable by law, all in an amount to be determined at trial in excess of $75,000.

## COUNT III
## BREACH OF CONTRACT

56.     Plaintiff hereby repeats and realleges each and every matter contained in paragraphs 1-55 above.

57.     Plaintiff entered into an employment agreement on August 9, 2010 with Metro Transit whereby Plaintiff agreed to provide services as a bus operator to Metro Transit in exchange for a salary and benefits.

58.     Metro Transit provided Plaintiff with an employee handbook, which contained terms that governed the employment agreement between the parties.

59.     On August 23, 2010, Metro Transit terminated Plaintiff's employment with Metro Transit on account of his disability that he suffered on August 12, 2010.

60.     The August 23, 2010 termination breached the parties agreement by failing to attempt to accommodate Plaintiff's disability.

61.     As a direct and proximate result of Defendant's wrongful conduct toward Plaintiff, Plaintiff has suffered damage from loss of income that he has not yet been able to replace in an amount to be determined at trial in excess of $75,000.

## COUNT IV
## UNLAWFUL MEDICAL INQUIRIES
## MINNESOTA HUMAN RIGHTS ACT

62.     Plaintiff hereby repeats and realleges each and every matter contained in paragraphs 1-61 above.

63.     Defendant Metro Transit's pre-employment inquiry requested that employment applicants, including Plaintiff, disclose all medical conditions, including all prescription and non-prescription drugs that he was taking.

64.    The medical inquiries identified in the preceding paragraph herein requests information that exceeds information that is essential for the job of bus operator, and thus Metro Transit violated Minn. Stat. § 363A.20.

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

1.    Damages for lost wages, compensatory damages, mental anguish, emotional distress, punitive damages, front pay and other damages in a reasonable sum to be determined at trial in excess of $75,000; plus

2.    For costs and disbursements of this lawsuit, including reasonable attorney's fees incurred in pursuing this action;

3.    For an order declaring that Defendant's practice of requesting the disclosure of all medical conditions without limitation to essential job functions is unlawful and Defendant is enjoined from making such requests; and

3.    Grant Plaintiff such other relief the Court deems just and equitable.

**JURY TRIAL DEMANDED**

Dated: November 21, 2011                 BY:

James T. Smith (#0388949)
HUFFMAN, USEM, CRAWFORD
& GREENBERG, P.A
1000 Water Park Place
5101 Olson Memorial Highway
Minneapolis, MN 55422
(763)-545-2720
FAX: (763)-545-2350
Email: James.T.Smith.Law@gmail.com

Attorney for Plaintiff